# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 10, 2012 Session

## STATE OF TENNESSEE v. TOLBERT CATES KAIL

**Appeal from the Circuit Court for Crockett County**
**No. 3970      Clayburn Peeples, Judge**

---

**No. W2011-01474-CCA-R3-CD  - Filed May 17, 2013**

---

The Defendant-Appellant, Tolbert Cates Kail, was convicted by a Crockett County jury of two counts of especially aggravated sexual exploitation of a minor, a Class B felony, sexual exploitation of a minor with fifty images or less, a Class D felony, contributing to the delinquency of a minor, a Class A misdemeanor, and assault, a Class B misdemeanor. The trial court sentenced Kail as a Range I, standard offender to an effective sentence of twelve years at 100%. On appeal, Kail argues (1) the evidence was insufficient to support his convictions; and (2) the trial court erred in denying his motion to sever. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Brandon L. Newman and James B. Webb, Trenton, Tennessee (on appeal); David Camp, Jackson, Tennessee (at trial), for the Defendant-Appellant, Tolbert Cates Kail.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Garry G. Brown, District Attorney General; and Edward L. Hardister, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A Crockett County Grand Jury returned a seven-count indictment charging Tolbert Cates Kail with sexual exploitation of a minor (less than one hundred images) (count one); especially aggravated sexual exploitation of a minor (counts two and three); sexual battery by an authority figure (count four); incest (count five); rape (count six); contributing to the

delinquency of a minor by providing alcoholic beverages to said minor on several occasions (count seven).  Kail's adopted daughter, a minor, was named as the victim in counts two through seven of the indictment.  In count one, the State did not name a specific victim, but it included the birth date of Kail's minor adopted daughter.

The victim, age seventeen at the time of trial, testified that she was born in July 1992.  She was adopted by Kail and his wife at the age of thirteen.  The victim described two incidents of sexual misconduct with Kail.  She said that the first instance occurred in August 2006, when Mrs. Kail was not at home.  Kail came into the bathroom while she was taking a bath and "started touching on [her] private area and rubbing [her] boobs."  The victim said that Kail told her to get out of the bathtub because he wanted to perform oral sex on her, and she complied.  She said Kail told her not to say anything to anybody about the encounter.

The victim said the next incident occurred a few months later.  She testified that Kail asked her to watch a pornographic movie with him.  After watching some of the movie, the victim went to her bedroom.  Kail then came to her bedroom and told her that he wanted to have sex with her.  The victim said Kail tried to penetrate her vagina but she kept saying, "No, please, stop, stop, stop."  Kail eventually stopped and again told the victim not to tell anyone about the encounter.  The victim could not recall whether the above incident occurred in 2006.  Asked if she fought Kail, the victim replied that she was scared.

The victim testified that Kail "took pictures of [her] once and sent a picture . . . on [her] phone that [she had taken] of [her] butt and he took it off [her] phone and sent it to his."  She identified the photograph at trial, which was admitted as exhibit 1.  Exhibit 1 shows a side view of the victim's torso, stomach, and buttocks.  The victim is wearing only panties in the photograph.  The victim testified that Kail took additional photographs of her, which were admitted into evidence as collective exhibit 2A-2F.

Exhibit 2A is a photograph showing the victim from her head to below her breast.  The victim is nude with her breasts fully exposed.  In exhibit 2B, a photograph showing the victim from her shoulders to her stomach, the victim is holding pool balls over the nipples of her breasts.  In exhibit 2C, a photograph showing the victim wearing a sports bra tank top and shorts covering her mid-thigh area, the victim is posing on a pool table.  In exhibit 2D, a photograph showing the victim wearing the same clothes as in exhibit 2C, the victim is positioned on her hands and knees facing the camera on top of the pool table.  Exhibit 2E, a photograph showing the victim's face and shoulder, the victim is wearing a tank top and holding a pool stick.  Exhibit 2F appears to be a wider view of the same photograph as exhibit 2D; however, the victim's face is distorted and more of her arms and legs are shown in the photograph.

The victim said that Kail took the photographs in exhibit 2 on a digital camera using an "SD card" and later uploaded the photographs onto the desktop computer in the dining room. She said that there were three computers in the home, two desktops and one laptop. Mrs. Kail used the laptop, and the desktop computer located in the kitchen was used by everyone. The other desktop computer was originally in the victim's room, but when it stopped working it was placed in the gray house behind the Kail home. The victim described the gray house as "a little hang-out area." The victim did not recall whether the photographs of her were taken in 2006.

At age fourteen and sometime in the summer of 2006, the victim began to drink alcohol in the Kail home "about every weekend." She said Kail bought her Bud Lite, Smirnoff, Hot Damn, and Ice One on One to drink. The victim named five other girls her age, including her best friend, who would also drink alcohol at the Kail's gray house. The victim said Mrs. Kail would be in Memphis visiting her parents, with her daughter, or in bed and "wouldn't know any of this was going on." The last time alcohol was provided to the victim by Kail was a few months before she left their home in 2007.

The victim testified that she assisted Kail make a video, admitted as exhibit 3, which depicted her best friend, age fifteen, exposing her breasts and buttocks while intoxicated.[1] She said that Kail started the video and she stopped it. She agreed that the video was taken at the Kail home and that she briefly "reach[ed] over and pull[ed] down [her friend's] shorts." She confirmed that Kail's voice was heard on the video. The victim uploaded the video onto her computer, which was the same computer that was later recovered from the Kail's gray house. Finally, the victim was shown exhibits four and five, both notebooks compiled after a forensic examination of the computers. Both exhibits contained sexually explicit photographs of young girls and various computer printouts listing incest related internet websites previously visited on the computers recovered from the Kail home. She denied downloading the photographs or visiting the internet websites listed in the exhibits. On November 10, 2007, the day the victim reported the offense, she moved out of the Kail home and into the home of her best friend, the minor who was filmed in the video.

On cross-examination, the victim agreed that she was required to attend Saturday School on November 10, 2007, the day she reported the offense. She attended Saturday School because she had skipped school earlier in the week with her boyfriend, Blake Bolding. According to the victim, the night before Saturday School "a pretty big blow-up"

---

[1]The actual video, a compact disc, admitted into evidence as exhibit 3 was not readable by this court's computers. However, there appears to be an unmarked video attached to another exhibit which is a duplicate of exhibit 3 that was readable. We nevertheless caution the parties to ensure that this court is able to view electronic evidence offered in future appeals.

occurred at Walmart because her boyfriend "just showed up" there while the victim and the Kails were shopping. She admitted that her boyfriend would come to the Kail home when the Kails were not present, that the desktop computers were not password protected, and that she never used her mother's laptop computer. Finally, she said that her boyfriend and several other friends had access to and had previously used her computer.

The victim said that Kail purchased a separate memory card to take nude pictures of her and "guessed" he would hide the card in his room. She agreed that her boyfriend and others had access to the camera. The victim clarified her previous testimony and agreed that she had in fact started the portion of the video when her friend exposed herself. She confirmed that during the filming Kail told her to turn the camera off and that she refused.

Sergeant-Detective Penny Curtis of the Crockett County Sheriff's Department spoke with Kail on November 10, 2007, the day she was notified of the offense. Kail told her that he had taken a photograph of the victim which was located on his cell phone. She said Kail explained that the victim had transferred the photograph to him from her phone. Sergeant-Detective Curtis confirmed that exhibit 1 was the same photograph she viewed and recovered from Kail's cell phone. Sergeant-Detective Curtis compiled a notebook, admitted as exhibit 7, that contained an additional twenty-four photographs of the victim and other young women, fully clothed or in a swim suit, recovered from Kail's cell phone. Sergeant-Detective Curtis testified that Kail denied taking nude photographs of the victim. However, Kail admitted taking a photograph of the victim in a tank top and a pair of "git-r-done" boxer shorts, which Sgt. Curtis believed was consistent with the photographs in collective exhibit 2.

Sergeant-Detective Curtis recovered the following items, admitted as exhibits at trial, from the Kail house on November 10, 2007: a laptop, a Gateway computer from the kitchen, a VHS video, a digital camera, and three handwritten sheets of paper, all of which were forwarded to the Tennessee Bureau of Investigation (TBI) for analysis. Sometime later, Kail's attorney brought Sgt. Curtis the computer tower that was in the victim's room and removed to the gray house, an "e-machine," and a manila envelope containing the computer's hard drive. These items were also forwarded to the TBI crime lab. Sergeant-Detective Curtis said exhibit 3, the homemade video showing the victim's minor friend, was retrieved from the hard drive of the computer from the gray house.

On cross-examination, Sgt. Curtis said she searched for the digital camera's memory card but never found it. She said she did not search the gray house on November 10, 2007. She also testified that the TBI lab reports did not reveal any tampering with the hard drive from the computer from the gray house.

Special Agent Melanie Garner of the Tennessee Bureau of Investigation, an expert in the area of computer forensics, examined the computers recovered from the Kail home and admitted as exhibit 8 ("the laptop"), exhibit 9 ("the Gateway"), and exhibit 13 ("the e-machine"). She made a "bit-by-bit copy" of each computer's hard drive. As a result of her examination, she prepared exhibit 4, a notebook containing twelve sexually explicit photographs of young girls printed from the hard drive of the Kails' laptop computer. Agent Garner was also able to determine that the following internet websites had been previously accessed on the same laptop computer: "RealIncestVideos.com," "TightTeenies.com," "ForcedFuckers.com," "Younger19.com," and "NNTeens,org." She testified that the photographs in collective exhibit 2 were also retrieved from the laptop.

Based on her examination of the Gateway computer, Agent Garner compiled another notebook, exhibit 5, which contained approximately fifty-two photographs of nude young girls in suggestive positions or engaged in sexually explicit acts. She was also able to retrieve a listing of previously accessed "URL's" for the Gateway computer which included "Teen Sex Movies.com," "Free Rape Photos.com," "DaddysWhores.com," and "LittleIncest.com." She noted that November 2, 2007, was the last time one of these internet websites was accessed. In regard to the e-machine, which was recovered with the computer tower from the gray house, Agent Garner prepared only a partial report. She explained that the e-machine was previously examined by a defense witness, and she was uncertain of the chain of custody. Nevertheless, Agent Garner forwarded her report to Sgt. Curtis. She confirmed that the Kail's computers were not password protected and that the age of the females depicted in the images was unknown. Finally, Agent Garner testified that she was unable to determine who downloaded the photographs or when they were downloaded.

The victim's best friend, age seventeen at the time of trial, testified that exhibit 3 was a video of her drinking alcohol at the Kails' house. She thought the video was made in the spring of 2007, around nine o'clock in the evening. The victim, her best friend, two other adults, and Kail were present when the video was filmed. Kail purchased the alcohol for them, and she had been drinking prior to the video. She said the victim and Kail each held the camera, and Mrs. Kail was not present. She further testified that she and the victim would drink alcohol "every weekend" or summer day when Mrs. Kail was away. She did not download the pictures in exhibit 5 and had no knowledge of any of her friends downloading them. She said Kail behaved "normally most of the time" around the victim but that sometimes "[h]e would touch her butt or something like that."

Anthony Blake Bolding, age nineteen at trial, testified that he took the victim home from school about twenty times. He said he went inside the Kail house once, never used the computers in the house, and never downloaded any photographs from the internet at their house. He also denied taking photographs of the victim with her breasts exposed and did not

take any of the photographs in exhibit two. On cross-examination, Mr. Bolding said he dated the victim for three months, including November 9 and 10 of 2007. He denied seeing the victim at Walmart Friday evening, November 9, 2007. He recalled one time in late September when he entered the Kail house. He said Kail was in a recliner in the living room and Mrs. Kail was asleep. He denied being at the Kail's house when they were not present. Although he never borrowed the Kails' camera, Mr. Bolding said Kail used it to take a picture of his car, which he was trying to sell.

Heather Esque Brooks, a good friend of the Kails' older daughter, testified on behalf of Kail that she lived at the Kails' house October 2006 through April 2007. She said prior to October 2006, she visited the Kails' house "regularly." She had opportunities to visit with the victim, and the victim never told her that Kail behaved inappropriately. On cross-examination, Mrs. Brooks confirmed that while living at the Kails' house, the laptop was Mrs. Kail's computer and everyone was allowed to use it. Another large computer was located in the kitchen and accessible to anyone. She believed there was a third computer in the house located in the victim's room that was later moved to "the family area." Mrs. Brooks denied using the victim's computer but agreed that it was accessible to anyone. She tried to access the victim's computer once but was unable to because she did not know the password. She also observed Kail use the computers in the home.

Mrs. Brooks was never invited to parties in the gray house and was unaware they occurred. She denied Kail took pictures of her in a bathing suit or underwear and noted she was there during cooler months. She confirmed that Kail had a digital camera he used to take pictures, and she recalled him videotaping the 2007 New Year's Eve party at his house for which he provided alcohol. The victim was not at the party. She agreed that as Kail videotaped it, he "would actually take a camera and come up on [Mrs. Brooks'] rear ends or come up on [her] front areas" and she "would actually kind of show some skin." Mrs. Brooks identified photos of herself taken by Kail at the New Year's Eve party, which were admitted into evidence. On redirect examination, Mrs. Brooks testified that no one under the age of eighteen was at this party.

Andrew Freese, an IT consultant for ATA Technologies, testified as an expert witness in the field of computer data recovery. He examined the e-machine and prepared a report which was admitted into evidence. He recovered various items from the e-machine including a video, pornographic and non pornographic images, instant messages containing sexual content, and an internet web history of searches for sexual content. On cross-examination, Mr. Freese said the e-machine was not password protected, was open for anyone to use, and had several pornographic sites related to incest on it.

Billy Jones, a neighbor who lived across the street from Kail, testified that he raised Kail and spoke to him daily. Mr. Jones said the Kails would tell him when they would be away from their house. Jones did not recall seeing anyone other than the victim at the house when the Kails were absent.

The jury convicted Kail of sexual exploitation of a minor (50 images or less); two counts of especially aggravated sexual exploitation of a minor; assault (as a lesser included offense of sexual battery by an authority figure); and contributing to the delinquency of a minor. The jury found Kail not guilty of incest and rape. Kail was sentenced to two years, two twelve-year terms, six months, and eleven months and twenty-nine days, respectively, to be served concurrently. Kail filed a motion for new trial, which the trial court denied. Kail then filed a timely notice of appeal.

## ANALYSIS

**I. Sufficiency of the Evidence.** Kail argues the evidence was insufficient to support his convictions of sexual exploitation of a minor, especially aggravated sexual exploitation of a minor, assault, and contributing to the delinquency of a minor. The State responds that the evidence was sufficient to sustain each of Kail's convictions. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578–79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A

guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

When the State offers proof of guilt based on circumstantial evidence, the jury decides how much weight to give to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958) (internal quotation and citation omitted)). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010) (citing Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956)). We note that the standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)).

In regard to the sexual exploitation of a minor (50 or less images) conviction, the State was required to show that Kail "knowingly possess[ed] material that include[d] a minor engaged in . . . [s]exual activity or [s]imulated sexual activity that is patently offensive." T.C.A. § 39-17-1003(a)(1), (2) (2003). A minor is defined as "any person who has not reached eighteen (18) years of age." T.C.A. § 39-17-1002(3). "Material" is defined, in pertinent part, as a "photograph . . . or other pictorial representation[, or any] image stored on a computer hard drive, a computer disk of any type, or any other medium designed to store information for later retrieval." T.C.A. § 39-17-1002(2)(A), (C). "Sexual activity" is defined, in part, as "[v]aginal . . . or oral intercourse . . . done with another person [or l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." T.C.A. § 39-17-1002(8)(A), (G). To sustain an especially aggravated sexual exploitation of a minor conviction, the State was required to prove that Kail "knowingly promot[ed] . . . assist[ed] . . . or permit[ted] a minor to participate in the performance of, or in the production of, acts or material that includes the minor engaging in [s]exual activity." T.C.A. § 39-17-1005(a)(1). The statute permits "the trier of fact [to] infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor." T.C.A. § 39-17-1005 (2003).

Relying on the victim's testimony that her then-boyfriend had used the computers in the Kails' home, Kail argues that the State "failed to prove beyond a reasonable doubt that [he] was the person who had downloaded these [child pornographic] images to this computer." Kail additionally claims that the verdict was tainted by evidence admitted on unrelated charges. In response, the State contends that the evidence is sufficient to support the conviction. We agree with the State.

-8-

Kail does not dispute the amount of photographs necessary for the offense or the offensive nature of the photographs recovered from the computers. He argues, as he did at trial, that because other people had access to the computers, he cannot be guilty of the offenses. We certainly agree with Kail to the extent that he argues the computers were widely accessible. Nevertheless, the proof at trial showed that each computer was recovered from Kail's house. The victim, friends who frequented the house, and her then-boyfriend denied accessing the computers for the purpose of downloading pornography. Moreover, a close review of the record shows that Kail admitted that he took photographs of the victim wearing a tank top and "'git-r-done' shorts." While that photograph alone was not pornographic, it was taken at the same time and in the same location as the other photographs in exhibit 2 which showed the victim's breasts.

Based on the above evidence, it is reasonable for a jury to infer that Kail downloaded the remaining twelve sexually explicit photographs found on the same laptop. Additionally, the victim and other witnesses who lived at the Kail home testified that the Gateway desktop computer located in the kitchen was used by everyone, including Kail. It contained over fifty sexually explicit photographs of young girls. The jury, as was its prerogative, simply rejected Kail's claim that someone else downloaded the photographs. See, e.g., State v. Kevin Allen Gentry, No. E2009-02041-CCA-R3-CD, 2011 WL 2936403, at *10-11 (Tenn. Crim. App. July 21, 2011) perm. app. denied (Tenn. Nov. 16, 2011). Accordingly, Kail is not entitled to relief on this issue.

In regard to the especially aggravated sexual exploitation of a minor convictions, Kail claims that the evidence is insufficient on the following grounds: (1) the State failed to prove that he took the photos originating from the victim's phone; (2) the State failed to recover the memory card for his camera; (3) the victim admitted taking some photographs herself; and (4) the victim said her boyfriend borrowed the camera and could have taken some photos. Based on our review, none of these grounds merit relief.

As an initial matter, the arguments in Kail's brief to this court fail to address the grounds upon which the State relied to establish these offenses. Kail's primary focus is on exhibit 1, a photograph of the victim wearing only panties and showing a side view of her stomach and buttocks. However, prior to trial, the State argued that the first count of especially aggravated sexual exploitation of a minor was based on Kail's act of making photographs of the victim in which she displayed her breasts and her body in a way that was lascivious. At trial, the victim testified that she took the photograph in exhibit 1, but Kail later transferred it from her phone to his. The victim additionally testified that Kail had taken photographs of her "topless" and on top of a pool table. She said Kail told her to hold pool balls over her breasts and then took a photograph of her. She testified that the photograph

of her in the "'git-r-done' shorts" was taken at the same time.  These photographs, admitted as collective exhibit 2, were obtained from the laptop taken from Kail's home.  Based on this evidence, we conclude that a reasonable jury could have found Kail guilty of especially aggravated sexual exploitation of a minor.

Kail makes no argument in his brief to this court challenging the sufficiency of the evidence supporting the second count of especially aggravated sexual exploitation of a minor conviction.  In any event, the State argued this count was based on Kail's act of using or permitting the victim to participate in the filming of a minor, her best friend, in which the victim's best friend was intoxicated and exposed her breasts and buttocks.  At trial, even though the victim conceded that she was in control of the camera when her friend exposed herself, the victim and her friend both testified that Kail was also in control of the video camera when they started to film.  Accordingly, we conclude that the evidence is sufficient to support the conviction.

In regard to the assault conviction, the State was required to show that Kail "[i]ntentionally or knowingly cause[d] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." T.C.A. § 39-13-101(a)(3) (2003).  Here, Kail challenges the evidence supporting the assault conviction by disputing the testimony of the victim.  He claims that her testimony was the only source of information regarding the touching, that her testimony was "questionable," and that "two witnesses testified as to [the victim's] lack of truthfulness."  In response, the State contends, and we agree, that the evidence is sufficient to support the assault conviction.  At trial, the victim testified that Kail touched her private areas on two separate occasions and that she was scared.  As this court has repeatedly stated, it is within the province of the jury to determine witness credibility.  Accordingly, we conclude that the evidence is sufficient to support Kail's conviction of assault.

In regard to the conviction of contributing to the delinquency of a minor, the State was required to show that Kail "contribut[ed] to or encourag[ed] the delinquency or unruly behavior of a child, whether by aiding or abetting or encouraging the child in the commission of an act of delinquency[.]" T.C.A. § 37-1-156(a) (2001).  Kail contends that the victim admitted filming the video, uploading it to the computer and internet, and hearing Kail tell her to stop recording.  He also argues that the verdict was tainted by evidence admitted on unrelated charges.  The State responds that the evidence was sufficient to support the conviction.

A "delinquent act" is defined as "an act designated a crime under the law." T.C.A. § 37-1-102(b)(9).  In Tennessee, possessing or consuming alcohol while under the age of twenty-one is a crime.  T.C.A. §§ 1-3-105(1), 1-3-113(b), 37-1-102(b)(9), 39-17-1505(a),

-10-

57-5-301(e)(1) (2006). The indictment charged Kail with contributing to the delinquency of his minor daughter by providing her with alcoholic beverages on several occasions. The victim and her best friend testified that Kail provided them with alcoholic beverages and hosted drinking parties, weekly. While the video appears to show the victim's friend drinking an alcoholic beverage, it merely corroborates actual trial testimony of the victim and her friend. This is more than sufficient evidence to support Kail's conviction. Kail is not entitled to relief.

**II. Severance of Offenses.** Here, Kail contends that the trial court abused its discretion by denying his motion to sever the offenses in this case. He argues that the trial court failed to make the requisite findings pursuant to Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000); specifically, whether the offenses constituted a part of the same common scheme or plan and whether the evidence of each crime would be admissible in the other. Based on comments the trial court made during a motion to suppress, the State contends that the trial court implicitly made the above determinations and properly denied the motion to sever. Here, we agree with Kail and conclude that the trial court abused its discretion in denying Kail's motion to sever.

A trial court's decision "to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) [is] to be reviewed for an abuse of discretion." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). "Therefore, a trial court's refusal to sever offenses will be reversed only when the 'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (citing State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)). "It is the responsibility of the defendant to show that he was clearly prejudiced by the trial court's refusal to sever the offenses." State v. Hall, 976 S.W.2d 121, 146 (Tenn. 1998).

In this case, the State joined multiple offenses in a single indictment pursuant to Tennessee Rule of Criminal Procedure 8(b), and Kail filed a motion to sever the offenses. The Tennessee Supreme Court has stated that "[i]f the defendant . . . moves to sever the offenses for trial, then [Tennessee Rules of Criminal Procedure,] Rule 14(b)(1) places the burden on the prosecution to show that the offenses are part of a common scheme or plan *and* the evidence of each crime would be admissible in the trial of the other." State v. Denton, 149 S.W.3d 1, 13 (Tenn. 2004). Note that "the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." Spicer, 12 S.W.3d at 443.

"[T]he 'primary issue' to be considered in any severance case is whether evidence of one offense would be admissible in the trial of the other if the two offenses remained severed." Id. at 445 (citing State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984)).

Tennessee Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). However, "other crimes, wrongs or acts" are admissible under Rule 404(b) when they are alleged to be a part of a common scheme or plan that is relevant to a material issue at trial. See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). In State v. Parton, 694 S.W.2d 299, 303 (Tenn.1985), the supreme court held that proof of other crimes may be admissible if, after a jury-out hearing, the trial court determines: (1) the evidence is relevant to an issue at trial, such as identity, and (2) the probative value of the evidence outweighs its prejudicial effect.

"In Tennessee, there are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." Shirley, 6 S.W.3d at 248 (citing Neil P. Cohen et al., Tennessee Law of Evidence § 404.11, at 180 (3d ed. 1995)). As relevant in the case here, "[t]he larger, continuing plan category encompasses groups or sequences of crimes committed in order to achieve a common ultimate goal or purpose." State v. Hallock, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993) (citing N. Cohen, Tennessee Law of Evidence, § 404.11 (2d ed. 1990)).

Spicer outlined the determinations a trial court must make at a hearing on a motion to consolidate or sever:

> Before consolidation is proper, a trial court must conclude from the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan, Tenn. R. Crim. P. 14(b)(1); (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses, Tenn. R. Evid. 404(b)(2); [State v.] Moore, 6 S.W.3d [235,] 239 [(Tenn. 1999)]; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant, Tenn. R. Evid. 404(b)(3).

Spicer, 12 S.W.3d at 445. Spicer also stated that "[a]s the comments to Rule of Criminal Procedure 8 make clear, the purpose of the severance provisions is to ensure that the defendant is insulated from the evidence of the other offenses when that evidence is not otherwise admissible." 12 S.W.3d at 446 (citing Tenn. R. Crim. P. 8, Advisory Comm'n Comments; Burchfield, 664 S.W.2d at 288). The Tennessee Supreme Court explained:

In certain situations, the State may offer evidence of prior crimes, wrongs or acts that are relevant only to provide a contextual background for the case. To do so,

> the state must establish, and the trial court must find, that (1) the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case; (2) the void created by the absence of the evidence would likely result in significant jury confusion as to the material issues or evidence in the case; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

State v. Goodwin, 143 S.W.3d 771, 780-81 (Tenn. 2004) (citation omitted) (quoting State v. Gilliland, 22 S.W.3d 266, 272 (Tenn. 2000)).

Spicer added that "because the trial court's decision of whether to consolidate offenses is determined from the evidence presented at the hearing, appellate courts should usually only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses." 12 S.W.3d at 445. However, the Tennessee Supreme Court held that where "the proceedings on the consolidation issue were shortened by the fact that the matter was not raised until the first morning of the trial[,] . . . . [its] analysis in such circumstances necessarily requires review of the evidence at trial." State v. Toliver, 117 S.W.3d. 216, 229 n.4 (Tenn. 2003).

Prior to trial, Kail properly filed a motion to sever in which he claimed that counts one and seven, sexual exploitation of a minor (less than one hundred images) and contributing to the delinquency of a minor, were wholly separate and unrelated to the remaining counts in the indictment. His motion further claimed that counts one and seven were not part of a common scheme or plan and that evidence relating to counts one and seven would not be admissible upon the trial of the other offenses charged in the case. Kail asserted counts two and three, especially aggravated sexual exploitation of a minor, should be tried together, and counts four, five and six, sexual battery by an authority figure, incest, and rape, should be tried together.

There is no written response from the State to Kail's motion to sever in the record on appeal. At the August 24, 2009 hearing on the motion to sever, the parties relied solely upon argument and offered no proof. The State argued that severance was not necessary because the same victim was alleged in each count. It additionally claimed that the "child pornography pictures" found as a result of a search warrant were part of Kail's common plan

or scheme and established his intent and motive to commit the offense. In response, defense counsel argued that the proof did not establish a "scheme." The record does not contain a written order from the trial court denying Kail's motion to sever. However, the trial court orally denied the motion and stated the following:

> [Defense Counsel,] based on what I know now, which is what I've heard, I'm going to deny your motion at this time. I will allow you as you get more information about what the State's theory of the case is . . . . to make that motion again [at a later time]."

In denying Kail's motion to suppress and after defense counsel expressed concern regarding the potential prejudice Kail would suffer as a result of the trial court's denial of Kail's motion to sever, the trial court engaged in the following exchange with defense counsel:

> [Defense Counsel]: It's my understanding [exhibit 3] is only pertinent or relevant strictly as to the issue of Count Seven, which is the delinquency.
>
> [The Court]: I think–I personally think it's relevant with regard to the sexual battery by an authority figure. I don't see the relevance with regard to the hundred images, but–
>
> [Defense Counsel]: The concern, Your Honor, and I understand the Court's ruling, of the jury being able, because we have separate incidents occurring here involving various activities, some of which involve [the victim] and some of which involve the pornography issue, some contributing.
>
> [The Court]: I understand there's a lot, but, I even see an avenue for acceptance here on part of a common scheme or plan. I see an acceptance for giving the jury a complete look at what was happening.
> . . . .
> [The Court]: I see it as relevant to the credibility of the witness, so I'm afraid I'm going to have to overrule your objection.

Despite the comments made by the trial court at the suppression hearing, we conclude that it failed to make the requisite findings pursuant to Spicer and the above authority; namely, that there was a common scheme or plan, that evidence of one crime would be admissible in the trial of the other, and that the probative value of admitting the evidence of the other offenses was not outweighed by its prejudicial effect. Accordingly, we agree with

-14-

Kail and conclude that the trial court abused its discretion in denying Kail's motion to sever. State v. Denton, 149 S.W.3d 1, 13 (Tenn. 2004).

We must now examine the effect of the trial court's error in failing to comply with the dictates of Spicer in denying Kail's motion to sever. In doing so, we must "determine what harm, if any, [Kail] suffered as a result of the improper joinder of the offenses and whether the gravity of the error warrants a new trial." Dotson, 254 S.W.3d at 388. Upon "considering the whole record, [t]he more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome on its merits." Id. (internal quotations omitted). "The key question is whether the error likely had an injurious effect on the jury's decision-making process. If the answer is yes, the error cannot be harmless." Id. at 389.

As we understand Kail's argument, he contends that counts one and seven should have been severed from the remaining counts in the indictment and tried separately.[2] Based on our review of the record as a whole, we conclude that the offenses establish a common scheme or plan. The proof at trial established that Kail downloaded pornographic images of young girls engaged in explicit sex acts. It further established that Kail asked his minor adopted daughter to watch a pornographic video with him prior to attempting sexual intercourse with her. The State argues, and we agree, that the evidence supporting count seven, contributing to the delinquency of a minor, enabled Kail to accomplish his overall common scheme or plan, as intoxicating the victim would "facilitate [Kail's] ability to produce sexually-oriented materials featuring the victim and engage in sexual contact with her."

We likewise conclude that each offense is relevant to some material issue in the trial of all the other offenses. Kail's defense theory was that someone else downloaded the pornographic images found on the computers in his home and someone else took the lascivious photographs of the victim found on the computers in his home. Accordingly, identity was at issue in counts one, two, and three. The evidence relied upon by the State to establish count one was derived from the computers recovered from Kail's home. As previously discussed, Kail admitted taking the photographs in exhibit 2, which served as the basis for count two. The evidence in count two therefore would have been admissible in counts one and three for the purpose of establishing identity. Moreover, while exhibit 3 served as the basis for count three, especially aggravated sexual exploitation of a minor, it also would have been admissible in count seven because it corroborated the testimony of the victim and her friend that Kail provided them with alcohol. Finally, we conclude that the

_____

[2] We do not consider, and Kail does not argue, counts five and six (rape and incest) because the jury found Kail not guilty of these charges.

-15-

probative value of admitting the evidence supporting the offenses in counts one and seven outweighed any unfair prejudicial effect.

Although the trial court failed to fulfill its responsibility of making findings of fact and conclusions of law following the pre-trial hearing on Kail's motion to sever, we conclude that the evidence presented at trial established Kail's common scheme or plan, that the evidence of each offense would have been admissible in the trial of the other to prove identity, motive, or intent, and that the probative value of the admission of the other offenses was not outweighed by their prejudicial effect. Accordingly, we cannot say that the trial court's error had an injurious effect on the jury's decision-making process. Because Kail has failed to demonstrate prejudice as a result of the trial court's error, he is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgments of the Crockett County Circuit Court.

_____
CAMILLE R. McMULLEN, JUDGE